W. J. Davis and Paula M. Davis v. Commissioner.
Davis v. Commissioner
Docket No. 1212-70 SC
United States Tax Court
T.C. Memo 1971-36; 1971 Tax Ct. Memo LEXIS 298; 30 T.C.M. (CCH) 155; T.C.M. (RIA) 71036; February 23, 1971, Filed. *298 W. J. Davis, pro se, 5826 Hickory Grove Rd., Charlotte, N. C. J. Randall Groves, for the respondent. JOHNSTON Memorandum Findings of Fact and Opinion JOHNSTON, Commissioner: The respondent determined a deficiency of $446.63 in petitioners' income tax for the taxable year 1968. In the determination of the deficiency the Commissioner disallowed interest expenses in the amount of $75.42 to which he now concedes petitioners are entitled. The remaining issues for decision involve business expense deductions totaling $1,981 and a medical expense deduction of $175.30. The allowability of the medical expense deduction will be determined by the disposition of the business expense deductions issue. Some of the facts have been stipulated and those facts are so found. The petitioners resided in Charlotte, North Carolina on the date of the filing of their petition. The petitioner and his wife, Paula M. Davis, filed a joint income tax return for the taxable year 1968 with the district director of internal revenue at Charlotte. Paula M. Davis is a petitioner herein solely by reason of having filed a joint return with her husband for the year at issue. On their income tax return *299 W. J. Davis, hereinafter called the petitioner, deducted as "away from home" expenses the amount of $1,981 for meals and lodging while in Charlotte. The petitioner has been employed by the Southern Railway Company since approximately 1923. The petitioner's employment with the Southern Railway began as a yard clerk at Columbia, South Carolina. On or about July 1946, he became a railroad trainman. A trainman is either a brakeman or a flagman. The duties vary somewhat. His principal duties were performed as one of the crew of a train that left Columbia for some outlying point. In 1959, the petitioner became a conductor. Up through 1967 the petitioner was stationed at Columbia except that since 1959 he had been stationed at Spartanburg and Union on occasion. Prior to 1968, the petitioner was listed for work as a trainman on the Extra Passenger Board out of Columbia. He was selected, on a seniority basis, to fill vacancies as they existed in passenger train crews, but the ICC permitted the discontinuance of all passenger trains out of Columbia except one and since the Extra Passenger Board was not needed to fill vacancies for that train the Board was abolished in December 1967. The *300 last job petitioner held in 1967 was as trainman on a passenger run between Columbia and Ashville, North Carolina. When the Extra Passenger Board was abolished in 1967 the petitioner lost the possibilities of having a job as trainman except in the outlying points of Greenville, Spartanburg and Union in South Carolina, Augusta, Georgia and Charlotte. At that time there were 7 jobs available at the cities named. All of these were local freight jobs. During the year 1968 there were no regular jobs available to the petitioner on trains out of Columbia and he performed no duty for his employer in Columbia. Any regular job open to him as a trainman or conductor based on his seniority was on trains originating in Charlotte, Greenville, Union, Augusta or Spartanburg. 156 From January 1 to January 31, 1968, petitioner was on vacation. Upon returning from vacation the petitioner applied for and received a job as trainman on Run No. 85 out of Charlotte. He remained on the run from February 14, 1968 to May 1968. Run No. 85 was a local freight which traveled between Charlotte and Chester, South Carolina with intervening stops. The run was on a daily basis. On May 14, 1968, the petitioner *301 applied for and received the position of conductor on Run No. 173 which traveled between Charlotte and Rock Hill, South Carolina. He continued working in this capacity until December 20, 1968, at which time Run No. 173 was abolished. The abolition of Run No. 173 was occasioned by the fact that during the period from December 20 to January 2 the freight normally handled by Run No. 173 was handled by combining Run No. 173 with another run. The result of this doubling up was to eliminate petitioner's job on Run No. 173 effective December 20, 1968. Run No. 173 operating between Charlotte and Rock Hill was again established in a bulletin issued December 26, 1968. The petitioner was assigned as conductor to train No. 173 on January 3, 1969. Run No. 173 was operated Sunday through Friday. The time for its round trip to Rock Hill was approximately 8 hours. The petitioner would leave about 11:00 A.M. and return at approximately 7:00 P.M. on the same day. The petitioner incurred expenses at Charlotte for lodging and meals. He stated that he paid $8 a week for lodging except for several times he stayed at a motel for which he paid $5.75 a night. Petitioner stayed at the lodging house commencing *302 about the last part of February or first of March. Prior to that time he stayed at the railroad dormitory which was provided for him at no cost. Petitioner states that he paid roughly $6 a day for meals. He had no receipts for meals or lodgings. Petitioner also stated that he made several trips between Charlotte and Columbia to visit his family. He computed his expenses for the trip to Columbia at the rate of 10 cents a mile for 105 miles for a total of $10.50 one way. The trip between Charlotte and Columbia took about 2 hours. Petitioner indicated that he ate on these trips but he did not establish the amount paid for meals. He also claimed that when he was employed on Run No. 173 he was off every Saturday and he drove his car to Columbia returning on Sunday in time to go to work. The petitioner computed the amount of his job expense deduction $1,981 by multiplying 283, the days away from home by $7 a day exclusive of Saturday and days off. Petitioner also contended that while on Run No. 85 he would occasionally take off a couple of days and return to Columbia. The petitioner was not informed of the length of time of the job which he took on Run No. 85 or that it would last any *303 certain number of days or weeks. When petitioner took the job on Run No. 173 he knew he would work on it until Christmas or thereabouts. He was aware of the fact that in prior years this job had been abolished at Christmas time. He also knew it was thereafter re-established after the first of the year. In addition to his employment by the railroad in Charlotte during 1968, petitioner was employed by the Mohawk Development Corporation at Charlotte. He worked for that corporation for 152 days as a night club bartender. This work was performed during the week. Sometimes he worked on Saturday night. Prior to coming to Charlotte in 1968 petitioner bought land 22 miles from Columbia on property which is known as Lake Murray property on which he intended to build a permanent home. In September 1968, petitioner bought a house in Charlotte, N.C. The petitioner's wife and children moved from Columbia, S.C. to Charlotte, N.C. in February 1969. The petitioner's post of duty upon his return from his vacation in 1968 was Charlotte, N.C. The petitioner's employment on Run Nos. 85 and 173 in 1968 was indeterminate or indefinite and not temporary. Where the termination of employment away from *304 "home" cannot be foreseen within a fixed or reasonably short period of time it is "indefinite". ; (C.A. 4, 1957) affd. per curiam; . The termination of petitioner's employment in Charlotte in 1969 could not have been seen within a fixed or reasonably short period of time. Petitioner argues that because in his employment at Charlotte he was subject to recall or subject to being replaced by a senior man or subject to a change in railroad operating policy his employment in Charlotte was temporary. The effect of these contingencies on the question of the 157 nature of the employment in Charlotte would be to make it indeterminate or indefinite rather than temporary. Since petitioner's employment in Charlotte was not temporary, he is not entitled to deduct the amounts spent for meals, lodging or traveling expenses in 1968. Reviewed and adopted as the report of the Small Tax Case Division. To reflect respondent's concession as to interest expenses, Decision will be entered under Rule 50.